UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:14-cv-01745-JMS-DKL |
| | ) |
| EOS CCA, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Presently pending before the Court in this action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, is Plaintiff Thomas Reed's Motion for Summary Judgment. [Filing No. 51.][1]

**I.
STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of

---

[1] Mr. Reed's counsel filed a factually similar complaint on behalf of a different plaintiff, Sherry Reynolds, in a separate case against Defendant EOS CCA ("EOS") and U.S. Asset Management, Inc. *See Reynolds v. EOS CCA, et al.,* No. 1:14-cv-01868-JMS-DML (S.D. Ind.). Ms. Reynolds filed a motion for summary judgment in her case, raising the same issues that Mr. Reed raises in his pending motion. Consequently, the Court is contemporaneously issuing an Order in *Reynolds* that is substantially similar to this Order.

a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co*., 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co*., 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 202 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus*., 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp*., 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that

they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### STATEMENT OF FACTS

In 2005, Mr. Reed contracted with Cingular Wireless for cell phone service. [Filing No. 52-1 at 1.] At some point in the future, AT&T Mobility acquired Cingular Wireless, and AT&T Mobility continued to provide Mr. Reed with cell phone service. [Filing No. 52-1 at 1.] Mr. Reed never signed an agreement with AT&T Mobility regarding his cell phone service, and never indicated that he agreed to any "terms of service" with AT&T Mobility. [Filing No. 52-1 at 1.] When Mr. Reed eventually stopped making payments on his AT&T Mobility account, AT&T Mobility did not apply interest to the unpaid amounts. [Filing No. 52-1 at 2.] Additionally, AT&T Mobility never informed Mr. Reed that he could be responsible for interest on or collection costs for unpaid amounts. [Filing No. 52-1 at 2.]

In August of 2012, U.S. Asset Management, Inc. ("U.S. Asset Management") purchased Mr. Reed's AT&T Mobility account and approximately two million more "charged-off" accounts from AT&T Mobility. [Filing No. 52-2 at 4; Filing No. 52-2 at 8; Filing No. 52-5.] U.S. Asset Management subsequently hired Defendant EOS to collect unpaid amounts on Mr. Reed's AT&T Mobility account. [Filing No. 52-2 at 14.]

On October 26, 2012, EOS sent Mr. Reed a letter on behalf of U.S. Asset Management, stating that Mr. Reed owed $431.35 in principal on his AT&T Mobility account, $84.03 in interest, and $77.65 in fees/collection costs, for a total owed of $593.03. [Filing No. 52-6.] When Mr. Reed checked his credit report in March 2014, it indicated that he owed a fee for interest on the

3

AT&T Mobility account. [Filing No. 52-1 at 2; Filing No. 1-3 (page from Equifax credit report indicating that Mr. Reed originally owed $431 on his AT&T Mobility account, and owed $633 as of February 2014).]

EOS's corporate representative, John Burns, testified that interest on the account had been accruing since May 14, 2010. [Filing No. 52-2 at 9-10.] Mr. Burns also testified that neither U.S. Asset Management nor EOS received the original Cingular Wireless contract signed by Mr. Reed, nor any documentation with Mr. Reed's signature, when they purchased his account from AT&T Mobility. [Filing No. 52-2 at 14-17.] Mr. Burns testified that neither EOS nor U.S. Asset Management have any documents indicating that Mr. Reed agreed to the AT&T Mobility terms of service. [Filing No. 52-2 at 14-17.]

Mr. Reed filed his Complaint in this matter on October 24, 2014, alleging that EOS violated §§ 1692d, 1692e, and 1692f of the FDCPA "when it misrepresented the amount of the debt on [his] credit report," and "when it attempted to collect an amount not authorized from [him]." [Filing No. 1 at 4.] Mr. Reed seeks actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages under 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3). [Filing No. 1 at 5.]

### III.
### DISCUSSION

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. Mr. Reed sets forth three main arguments in support of his Motion for Summary Judgment: (1) that EOS violated the FDCPA when it sent the October 26, 2012 letter attempting to collect interest and collection costs not

4

provided in the contract; (2) that AT&T Mobility waived any application of interest and collection costs, so EOS is estopped from seeking them; and (3) that EOS's failure to properly compute the interest allegedly due on his account, and to subsequently modify the interest rate without notice, violates the FDCPA.  [Filing No. 52 at 9-19.][2]

### A. FDCPA Violations for Attempting to Collect Interest and Collection Costs Not Provided in the Contract

Mr. Reed argues that EOS violated the FDCPA by attempting to collect interest and collection cost not provided for in any contract between him and AT&T Mobility.  Mr. Reed states that EOS "does not have any documentation signed by Mr. Reed in which he agreed to be responsible for interest and collection costs on his old AT&T Mobility account." [Filing No. 52 at 9.]  Therefore, Mr. Reed contends that "by applying collection costs and interest to [his] account, Defendant is misleading Mr. Reed that these extraneous amounts are legally owed by him." [Filing No. 52 at 9.]  Mr. Reed argues that neither U.S. Asset Management nor EOS possess any signed contracts or have record of his original contract.  [Filing No. 52 at 10-11.]  Mr. Reed contends that Mr. Burns also was not able to determine whether the AT&T Terms of Service provided by EOS during discovery applied to Mr. Reed.  [Filing No. 52 at 10-12.]  Ultimately, Mr. Reed contends that the "2009 AT&T Terms of Service" are not applicable because he signed his cell phone contract with Cingular Wireless prior to 2009.  [Filing No. 52 at 12.]  Thus, without any legal basis to charge and collect interest or collection costs, Mr. Reed argues that EOS violated the FDCPA. [Filing No. 52 at 12.]

---

[2] While Mr. Reed alleges in his Complaint that EOS violated the FDCPA by "misrepresent[ing] the amount of the debt on the Plaintiff's credit report," [Filing No. 1 at 4], Mr. Reed does not discuss that theory of liability at all in his Motion for Summary Judgment.  Perhaps this is because the inaccurate reporting of a debt to a credit reporting agency generally would be governed by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, and Mr. Reed does not bring any claims under that Act.

5

In response, EOS does not present any further evidence, but uses Mr. Reed's own statements to rebut his position. First, EOS attempts to establish the presence of a contract through Mr. Reed's admission that he entered into a contract with Cingular Wireless. [Filing No. 59 at 6.] EOS argues that Mr. Reed admits that he had been using his cellular service even after knowing his plan had switched to AT&T Mobility and receiving monthly bills from AT&T Mobility. [Filing No. 59 at 6.] EOS points to a provision in AT&T Mobility's Terms of Service which states:

> If you decide to terminate because you object to the Terms of this Agreement, return any handsets or accessories in accordance with the Cancellation Period/Termination provision below AND, in order to have any restocking fee returned, send a letter as described in the Cancellation Period/Termination provision within 15 days.

[Filing No. 59 at 6 (quoting Filing No. 52-4 at 2) (emphasis omitted).] EOS contends that "[s]uch terms of service would have been provided at the time the service was activated." [Filing No. 59 at 7.] EOS asserts that Mr. Reed's admitted and continued usage of the phone service constitutes assent to the AT&T Mobility terms of service. [Filing No. 59 at 7.] Thus, arguing the terms of service are binding, EOS points to a second provision in the terms of service which allows for the collection of late payments:

> You agree to reimburse us the fees of any collection agency, which may be based on a percentage at a maximum of 33% of the debt, and all costs and expenses, including reasonable attorney's fees, we incur in such collection efforts.
>
> You agree that for amounts not paid by the due date, AT&T may charge, as a part of its rates and charges, and you agree to pay, a late payment fee of $5 in CT, D.C., DE, IL, KS, MA, MD, ME, MI, MO, NH, NJ, NY, OH, OK, PA, RI, VA, VT, WI, WV; the late payment charge is 1.5% of the balance carried forward to the next bill in all other states.

[Filing No. 59 at 7 (quoting Filing No. 52-4 at 10; Filing No. 52-4 at 13).] Additionally, EOS attempts to justify the 8% interest rate imposed on Mr. Reed's outstanding charges by citing Indiana Code § 24-4.6-1-103, which allows for accrual of interest from "the date an itemized bill

shall have been rendered and payment demanded on an…account closed." [Filing No. 59 at 9-10.]

On reply, Mr. Reed contends that EOS misquotes his affidavit, relies on language not present in the record, cites to incorrect documents, provides no evidence to support its position, and cannot provide "admissible evidence that the 'Terms of Service' it references…control in this case." [Filing No. 60 at 2-3.] Mr. Reed rejects EOS's contention that the AT&T Mobility "2009 Terms of Service" produced by EOS are binding. [Filing No. 60 at 5.] He states that "[d]efendant fails to provide any evidence under oath that the 'Terms of Service' at issue in this matter is the 'Terms of Service' that applied to Mr. Reed's account with AT&T Mobility." [Filing No. 60 at 5.] Mr. Reed also notes that "[d]efendant produced more than one 'Terms of Service' during discovery in the case," and emphasizes that EOS "cannot simply point to an arbitrary 'Terms of Service' agreement and argue that it is the one that applied to Mr. Reed's account." [Filing No. 60 at 5.] Furthermore, Mr. Reed rejects EOS's application of the 8% interest rate pursuant to Indiana Code 24-4.6-1-103 by pointing out that the statute "pertains to the imposition of interest on judgments," and therefore is not applicable in this case. [Filing No. 60 at 6 (emphasis omitted).]

 *1. Whether a Contract Providing for the Imposition of Interest and Collection Costs Existed*

The Seventh Circuit has "consistently held that summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)). To overcome a motion for summary judgment, the non-moving party must support the asserted facts by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A).

7

Here, EOS has not provided any evidence to the Court which would suggest the presence of a binding contract between Mr. Reed and AT&T Mobility that provided for the imposition of interest and collection costs. In fact, the record evidence demonstrates that EOS does not possess such documentation. During his deposition, Mr. Burns admitted that EOS does not possess documentation, with Mr. Reed's signature, agreeing to any AT&T Mobility terms of service. [Filing No. 52-2 at 11-12.] And, significantly, Mr. Burns could not testify that Mr. Reed agreed to the "2009 Terms of Service." [Filing No. 52-2 at 12.] Mr. Burns stated that EOS got "representations from AT&T that these are valid accounts, the balances are accurate, and we rely upon those representations," but could not even testify with certainty that AT&T Mobility was Mr. Reed's cellular service provider. [Filing No. 52-2 at 12-13.] The Court finds that EOS has not presented sufficient evidence to establish Mr. Reed's assent to the "2009 AT&T Terms of Service" or any other contract with AT&T Mobility that authorized the imposition of interest and collection costs.

As the Seventh Circuit has repeatedly assured the district courts, the Court is not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them. *Johnson*, 325 F.3d at 898. EOS has not produced a valid contract between Mr. Reed and AT&T Mobility and, thus, has not established that such a contract – providing for the imposition of interest and collection costs – ever existed between those parties.

### 2. FDCPA Violations

Mr. Reed's Complaint sets forth claims for violations of the FDCPA pursuant to 15 U.S.C. §§ 1692d, 1692e, and 1692f. [Filing No. 1 at 4.] Because the issue of whether EOS has violated § 1692e and § 1692f turns specifically on the validity of the debt, the Court will consider Mr. Reed's claims under those sections first.

8

### a. § 1692e

15 U.S.C. § 1692e creates a private action against a debt collector who uses "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA sets forth non-exhaustive examples of conduct that violates this section, such as "[t]he threat to take any action that cannot legally be taken." *Id.*, § 1692e(5). To determine which actions violate the FDCPA, the Seventh Circuit follows the "unsophisticated consumer" standard. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). The unsophisticated consumer "isn't a dimwit. She may be 'uninformed, naïve, [and] trusting,'…but she has 'rudimentary knowledge about the financial world,' and is 'capable of making basic logical deductions and inferences.'" *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (citations omitted). "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA – even if it is false in some technical sense." *Id.* at 645-46.

The question of whether debt collectors have violated § 1692e is objective in nature. *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). The question does not turn on "what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Id.* Furthermore, the FDCPA is a strict liability statute. "[A] consumer need not show intentional conduct by the debtor collector to be entitled to recover damages." *Conner v. Howe*, 344 F.Supp.2d 1164, 1172 (S.D. Ind. 2004); *see also* *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004).

Mr. Reed alleges that EOS's actions of attempting to collect interest and collection costs was misleading. [Filing No. 52 at 9.] As Mr. Reed testified, AT&T Mobility did not attempt to collect or add any interest to his account, even after he stopped making payments on the account. [Filing No. 52-1 at 1-2.] Furthermore, AT&T Mobility never informed Mr. Reed that he could be

9

liable for interest or collection costs. [Filing No. 52-1 at 2.] As discussed above, EOS cannot affirmatively establish that the "2009 AT&T Mobility's Terms of Service" were applicable to Mr. Reed. Other courts have similarly found that "generic" terms of service or parallel agreements do not constitute sufficient evidence to overcome summary judgment in the FDCPA context. *See McCollough v. Johnson, Rodenburg & Lauinger, LLC.*, 637 F.3d 939, 950 (9th Cir. 2011) (granting summary judgment in favor of plaintiff in FDCPA case and stating "the presentation of generic evidence that all [cardmember agreements] contain attorney's fees provisions was insufficient to create a genuine issue of material fact for the jury"); *see also Robinson v. Sherman Financial Group, LLC*, 984 F.Supp.2d 816, 825 (E.D. Tenn. 2013) (denying defendant's summary judgment motion and stating "the HSBC Cardmember Agreement provided by [Defendants] is a generic form and there are no names, signatures, or other personal identifiers to demonstrate this particular document is in anyway connected to Plaintiff's original agreement with HSBC"). There is nothing in the record which establishes that Mr. Reed agreed to, knew about or should have been expecting the imposition of interest and collection costs.

Mr. Reed is entitled to summary judgment on his claim under § 1692e of the FDCPA because EOS has not established that he entered into a contract with AT&T Mobility that provided for the collection of interest and collection costs.

### b. § 1692f

Mr. Reed also alleges that EOS violated 15 U.S.C. § 1692f, which prohibits "[t]he collection of any amount (including any interest [or] fee…) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The Seventh Circuit has instructed that whether or not a defendant has violated § 1692f "does not hinge on the defendant's knowledge, but rather upon how a consumer would perceive the demand

letter." *Turner,* 330 F.3d at 996. Additionally, a plaintiff alleging a violation of § 1692f need not show any intent on the defendant's part. *Id.* Therefore, bona fide errors do not excuse the perpetrator from a violation of § 1692f. *Id.*

Similar to the analysis above, the Court again focuses on the fact that EOS has not submitted into evidence a contract between Mr. Reed and AT&T Mobility. A simple and plain reading of the statute requires an explicit agreement authorizing the amounts EOS attempted to collect in the October 26, 2012 letter. 15 U.S.C. § 1692f(1). EOS argues that the "2009 Terms of Service" document is such a contract, but have not provided evidence that Mr. Reed ever agreed to it.

EOS attempts to justify applying interest to Mr. Reed's account by relying upon Indiana Code 24-4.6-1-103, which allows for application of an 8% annual interest rate "from the date an itemized bill shall have been rendered and payment demanded on an…account closed…." Ind. Code 24-4.6-1-103(b). Again, however, EOS has not produced a contract between Mr. Reed and AT&T Mobility that would create the debt in the first place. Because that is so, the Court cannot determine whether Indiana law even applied to the terms of the contract – perhaps the contract provided otherwise. Additionally, § 24-4.6-1-103 is generally used to determine the amount of prejudgment interest the losing party in a lawsuit owes. *See, e.g.*, *Easyrest, Inc. v. Future Foam, Inc.*, 2008 WL 126647, *2 (S.D. Ind. 2008) ("Under Indiana law, prejudgment interest is to be awarded where the amount of damages was fixed and ascertainable…. Under Indiana Code 24-4.6-1-103, unless a different rate is specified by contract, prejudgment interest is awardable at a rate of Eight Percent (8%) per annum from the time payment was due until judgment is entered"). EOS has not pointed the Court to any authority standing for the proposition that § 24-4.6-1-1-3 allows a debt collector to collect interest on an unpaid debt where, as here, the debt collector has

11

not produced the contract that provides for the imposition of interest in the first place, or any other evidence that an 8% interest rate would apply.

EOS did not produce either Mr. Reed's Cingular Wireless contract or any subsequent contract – specifically applicable to Mr. Reed – explicitly authorizing AT&T Mobility to collect interest and collection costs. Thus, EOS is in violation of § 1692f by attempting to collect interest and collection costs without an agreement expressly authorizing such collection, and Mr. Reed is entitled to judgment as a matter of law on his claim under § 1692f.

### c. § 1692d

Mr. Reed alleges in his Complaint that "[t]he Defendant's acts and omissions constitute a violation of 15 U.S.C. § 1692d." [Filing No. 1 at 4.] Section 1692d provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
>
> (4) The advertisement for sale of any debt to coerce payment of the debt.
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d.

Mr. Reed does not discuss his claim under § 1692d at all in his Motion for Summary Judgment, nor has he provided the Court with evidence of any conduct by EOS which would suggest that EOS's actions fall within § 1692d. Specifically, Mr. Reed has not presented any evidence of a threat of violence, use of obscene or profane language, publication of his name on any consumer lists, advertisements for sale of his debt, or continuous telephone calls. 15 U.S.C. § 1692d(1)-(6); *see also Frye v. Bowman, Heintz, Boscia, and Vician, P.C.*, 193 F.Supp.2d 1070, 1081-82 (S.D. Ind. 2002) (denying plaintiff's motion for summary judgment on a claim brought under § 1692d because no support for the claim was provided, including evidence of any action which naturally resulted in harassment, oppression, or abuse.) Thus, Mr. Reed is not entitled to judgment as a matter of law on his claim under § 1692d.[3]

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Mr. Reed's Motion for Summary Judgment, [Filing No. 51], to the extent that it finds that he is entitled to judgment as a matter of law on his claims under § 1692e and § 1692f of the FDCPA. The Court **DENIES IN PART** Mr. Reed's Motion for Summary Judgment, [Filing No. 51], to the extent that Mr. Reed is not entitled to judgment as a matter of law on his claim under § 1692d of the FDCPA. No partial final judgment shall enter at this time.

---

[3] Because the Court has found that Mr. Reed is entitled to summary judgment on his claims under § 1692e and § 1692f, and since he does not address his § 1692d claim at all in his Motion for Summary Judgment, the Court need not, and will not, address Mr. Reed's additional arguments that AT&T Mobility waived any right to collect interest and collection costs so EOS is estopped from collecting them, and that EOS incorrectly calculated the amount of interest it sought to collect.

The Court requests that the Magistrate Judge meet with the parties to discuss the possibility of resolving Mr. Reed's claim under § 1692d,[4] and to address the issue of the appropriate amount of damages for EOS's violations of § 1692e and § 1692f, before the August 23, 2016 trial in this matter.

Date:  April 26, 2016

*(signature)*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[4] When determining whether to pursue his claim under § 1692d, Mr. Reed should be mindful of Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.