UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS REED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:14-cv-01745-JMS-DKL |
| ) | |
| EOS CCA, ) | |
| ) | |
| Defendant. ) | |

### **ORDER**

This case involves Defendant EOS CCA's ("EOS") efforts to collect a principal amount, interest, and fees/collection costs on behalf of AT&T Mobility. AT&T Mobility claimed Plaintiff Thomas Reed owed these amounts after he stopped making payments on his AT&T Mobility account. Mr. Reed initiated this action against EOS, alleging that it violated § 1692d, 1692e, and 1692f of the Fair Debt Collection Practices Act ("FDCPA"). He argued that EOS violated the FDCPA by attempting to collect interest and collection costs not provided for in any contract between him and AT&T Mobility. Despite settling numerous other cases involving the same issue, EOS opted to vigorously litigate this case. Ultimately, the Court granted summary judgment in favor of Mr. Reed on his § 1692e and § 1692f claims related to the collection of interest and costs, finding that EOS had not provided any evidence suggesting the presence of a binding contract between Mr. Reed and AT&T Mobility that provided for the imposition of those amounts. [Filing No. 62 at 9-12.] The Court denied Mr. Reed's summary judgment motion as it related to his § 1692d claim, finding that he had not presented any evidence of a violation of that provision. [Filing

No. 62 at 12-13.] On May 13, 2016, Mr. Reed notified the Court that he was voluntarily dismissing his § 1692d claim. [Filing No. 67.][1]

Presently pending before the Court are Mr. Reed's Motion for Assessment of Attorneys' Fees and Costs, [Filing No. 75], and his Supplemental Motion for Assessment of Attorneys' Fees and Costs, [Filing No. 83]. As discussed below, the Court finds the fees and costs Mr. Reed requests to be reasonable for the most part, with some adjustments. Accordingly, it grants Mr. Reed's motion in part and denies it in part.

# I.
## RELEVANT BACKGROUND

Mr. Reed initiated this lawsuit on October 24, 2014, [Filing No. 1], and, after conducting discovery and attending numerous pretrial conferences (including a settlement conference), he moved for summary judgment on December 29, 2015, [Filing No. 51]. As noted above, Mr. Reed obtained summary judgment on two claims, and voluntarily dismissed his remaining claim. [Filing No. 62; Filing No. 67.] In the meantime, EOS entered into settlements without significant litigation with seven plaintiffs who filed cases in this District asserting claims based on facts substantially similar to the facts in this case. [*See George v. EOS CCA, et al.*, 1:14-cv-0556-SEB-DML; *Smith v. EOS CCA*, 1:14-cv-01778-WTL-MJD; *Emery v. EOS CCA, et al.*, 1:13-cv-1421-LJM-DKL; *Milliken v. EOS CCA*, 1:13-cv-01748-WTL-TAB; *Hunt v. EOS CCA, et al.*, 1:13-cv-01787-TWP-DML; *Hill v. EOS CCA, et al.*, 1:13-cv-02049-RLY-TAB; *Howell v. EOS CCA*, 1:14-cv-01259-WTL-MJD.] Despite the similarity of Mr. Reed's claims, EOS chose to vigorously

---

[1] It does not appear that the Court formally acknowledged Mr. Reed's dismissal of his § 1692d claim. To the extent any clarification is necessary, the Court considers the § 1692d claim dismissed.

2

litigate this case (including the issue of attorneys' fees and costs) along with another substantially similar case, *Reynolds v. EOS CCA & U.S. Asset Management, Inc.*, 1:14-cv-1868-JMS-DML.[2]

After obtaining summary judgment on two of his claims, the parties agreed that Mr. Reed would receive $1,000 in statutory damages from EOS, and the fee issue is now the only issue remaining in this litigation. [*See* Filing No. 83 at 1.] Mr. Reed now seeks a total of $26,791.51 in attorneys' fees and $1,390.26 in costs. [Filing No. 75; Filing No. 83.]

## II.
## APPLICABLE LAW

Section 1692k of the FDCPA provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of…in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The party seeking the fee award has the burden of proving the reasonableness of the fees sought. *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999). Once this burden is met, then the party opposing the fee award has the burden of demonstrating why the amount sought is unreasonable. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011).

Typically, the district court "is in the best position to make the 'contextual and fact-specific' assessment of what fees are reasonable." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). Although the district court's discretion is not boundless, the United States Supreme Court "has said that there is hardly any 'sphere of judicial decisionmaking in which appellate

---

[2] A similar fee motion was filed in *Reynolds*, and the Court is issuing an order on that motion contemporaneously with this Order.

micromanagement has less to recommend.'" *Id.* (quoting *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011)).

The Court "generally begins the fee calculation by computing a 'lodestar': the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate." *Montanez, 755 F.3d at 553*. "Although the lodestar yields a presumptively reasonable fee," the Court may still adjust that fee based on factors not included in the computation. *Id.* (citing *Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)*). Ultimately, "the guiding inquiry is whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *Montanez, 755 F.3d at 553* (quoting *Hensley, 461 U.S. at 434*). In calculating the lodestar the Court "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox, 131 S.Ct. at 2216*. Accordingly, the Court "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

### III.
### DISCUSSION

Mr. Reed argues in support of his motion that EOS chose to litigate this case even though it settled seven similar cases, that an award of attorneys' fees is mandatory under the FDCPA when the plaintiff prevails, that the lodestar method is applicable, that his attorneys' rates are reasonable, and that his attorneys spent a reasonable amount of time litigating the case. [Filing No. 76 at 1-13.] Mr. Reed submits the curriculum vitae of his attorneys, [Filing No. 75-2; Filing No. 75-5], his attorneys' itemized invoices, [Filing No. 75-3], and the Declaration of David J. Philipps, [Filing No. 75-6]. Mr. Philipps is an experienced FDCPA litigator who opines that Mr. Reed's attorneys have "a solid reputation for their work for consumers on FDCPA lawsuits," and that their hourly

4

rates are "at the low end of the range of rates charged in the Indianapolis market for work performed in contingent, statutory fee-shifting cases, particularly considering their experience in such matters." [Filing No. 75-6 at 20-21.] Mr. Philipps also opines that the paralegal who performed work on Mr. Reed's case has a rate which is within the reasonable range. [Filing No. 75-6 at 21.] Finally, he states that "[t]he records reveal that [Mr. Reed's attorneys] have been extremely efficient in their time, with much of the time incurred by [an associate], who has a lower rate." [Filing No. 75-6 at 21.]

In response, EOS argues that the fees Mr. Reed seeks should be "drastically reduced." [Filing No. 80 at 1.] It agrees that the lodestar method applies, but argues that the hourly rates requested are unreasonable, and the hours expended are unreasonable for a variety of reasons, including that: (1) time was spent on boilerplate forms and tasks; (2) time was spent on purely administrative and clerical tasks; and (3) time was spent on duplicative, excessive, and unnecessary tasks. [Filing No. 80 at 2-14.] EOS requests that the fee award be reduced to an amount not to exceed $5,000. [Filing No. 80 at 14.]

On reply, Mr. Reed reiterates many of his arguments, and stresses that EOS levied an aggressive defense in this case, that his attorneys needed to tailor boilerplate pleadings to this case, that the items EOS claims were purely clerical in nature were not, and that the attorneys did not perform duplicative work. [Filing No. 82.]

The Court will address each of EOS's arguments in turn.

**A. Attorneys' Hourly Rate**

Mr. Reed argues that his attorneys' hourly rates – $300 for Mr. Steinkamp and $200 for Mr. Eades – are reasonable because they both have extensive experience with FDCPA litigation, and other courts have found comparable rates reasonable. [Filing No. 76 at 8-9.] Mr. Reed also

5

notes that in 2014 another court in this District found that a rate of $275 per hour for Mr. Steinkamp and $175 per hour for Mr. Eades was reasonable. [Filing No. 76 at 7.] He argues that his attorneys' experience on FDCPA issues has increased significantly during the last few years, so an increase to $300 and $200, respectively, is reasonable. [Filing No. 76 at 7.]

In response, EOS cites cases from this District awarding fees of $250 per hour or less in FDCPA cases, and argues that Mr. Reed should have submitted the portion of his fee agreement with his attorneys which set forth the attorneys' rates. [Filing No. 80 at 4.] EOS also argues that Mr. Philipps' opinion should be disregarded because Mr. Steinkamp and Mr. Eades regularly appear as co-counsel with Mr. Philipps in legal matters, and "vouching for the reasonableness of each other's fees is ostensibly self-serving…." [Filing No. 80 at 5.] Finally, EOS notes that Mr. Reed did not identify the paralegal who performed work, or discuss the qualifications of that person. [Filing No. 80 at 5.]

On reply, Mr. Reed argues that he has provided evidence that his attorneys' rates are reasonable, and that EOS has not provided any evidence that the rates are unreasonable. [Filing No. 82 at 2-3.]

"A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez*, 755 F.3d at 553 (citation omitted). "The best evidence of the market rate is the amount the attorney actually bills for similar work." *Id.* "An attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services." *Spegon*, 175 F.3d at 556. Mr. Philipps, who EOS describes as "a highly accomplished and well-regarded FDCPA attorney in his own right," [Filing No. 80 at 4-5], opines that Mr. Steinkamp and Mr. Eades "have developed a solid reputation for their work for consumers on FDCPA lawsuits." [Filing No. 75-6 at 20-21.] And EOS agrees that "Plaintiff's counsel are plainly qualified to handle

6

FDCPA cases…." [Filing No. 80 at 3.] But EOS argues that courts within this District have "generally declined to award $275 [per hour] for similar work," so the Court should only award Mr. Steinkamp $250 per hour, Mr. Eades $150 per hour, and the paralegal $100 per hour. [Filing No. 80 at 4.]

There is no doubt here that Mr. Steinkamp and Mr. Eades have extensive experience litigating FDCPA cases. [*See* Filing No. 75-2 (Mr. Steinkamp's curriculum vitae); Filing No. 75-5 (Mr. Eades' curriculum vitae).] Indeed, Mr. Steinkamp has practiced in front of this Court in numerous FDCPA cases. Mr. Reed claims that his attorneys' experience with FDCPA issues has "increased significantly over the course of the past several years," [Filing No. 76 at 7], and Mr. Philipps opines that their rates are "at the low end of the range of rates charged in the Indianapolis market for work performed in contingent, statutory fee-shifting cases," and the paralegal's rate "is also well within the range of what is charged in the Indianapolis market for paralegal work," [Filing No. 75-6 at 21]. Courts within this District have found that a rate of $275 for Mr. Steinkamp was reasonable, *see Edwards v. Law Firm of Krisor & Associates*, 2015 WL 3961078, *4 (S.D. Ind. 2015); *Karr v. Med-1 Solutions, LLC*, 2014 WL 5392098, *2 (S.D. Ind. 2014), and this Court agrees. The only justification Mr. Reed supplies for his attorneys' increased rates is that their experience has increased, but the Court finds that this is not sufficient to show that the current rates are reasonable. Additionally, Mr. Philipps does not explain the extent of his inquiry into the rates of FDCPA attorneys in the Indianapolis area. He states only that Mr. Reed's attorneys' rates are at the "low end" of the range, but does not state what that range is nor how many attorneys' rates are in that range. *See Pickett*, 664 F.3d at 640 ("evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases" is needed to support a fee request).

7

Similarly, Mr. Philipps simply states that the paralegal's rate of $125 per hour is well within the range of what is charged for paralegal work in Indianapolis, but does not further explain what that range is nor the type of work with which it corresponds. Mr. Reed notes that this Court accepted an hourly rate of $100 per hour for paralegal work in a 2012 decision, and argues that "[a]fter more than four (4) years have passed, it [is] logical that the rates for paralegals should increase as well." [Filing No. 82 at 3.] But he does not explain why a 25% increase in that rate is justified simply because some time has passed.

In sum, because Mr. Reed has not adequately justified his attorneys' or the paralegal's rates, and based on other awards made in the Southern District of Indiana, the Court will reduce those rates to $275 per hour for Mr. Steinkamp, $175 per hour for Mr. Eades, and $100 per hour for the paralegal.

### B. Time Expended

Mr. Reed asserts that his attorneys spent a reasonable amount of time litigating this case, and notes that EOS settled several other nearly identical cases yet chose to aggressively litigate this case. [Filing No. 76 at 1-2.] Mr. Reed also argues that the amount of attorneys' fees requested far exceeds his award in this case because EOS chose to litigate the case, and not because of any action on Mr. Reed's part. [Filing No. 76 at 3.] He points out that the parties engaged in extensive discovery which required taking a deposition in Massachusetts, and litigated the case to summary judgment which required extensive research, drafting, and revising. [Filing No. 76 at 3.]

EOS argues in response that the hours Mr. Reed's attorneys expended are unreasonable for various reasons discussed below, and should be reduced from an award of $24,099.33 to an award of $5,000. [Filing No. 80 at 5-14.]

8

In his reply, Mr. Reed addresses each argument raised by EOS, and argues that EOS did not provide any evidence that the number of hours his attorneys expended are unreasonable. [Filing No. 82 at 3-14.]

The Court notes at the outset that it finds significant that EOS settled numerous substantially similar lawsuits, yet chose to litigate this lawsuit and the *Reynolds* matter. While the fees and costs request is relatively large when compared to Mr. Reed's $1,000 recovery, EOS made a decision to litigate this matter despite apparently recognizing weaknesses with its position when settling other, similar cases. The Court rejects outright EOS's request that the Court reduce the fee award to $5,000 – such an award would reflect just over eighteen hours of Mr. Steinkamp's time at a rate of $275 per hour, less than twenty-nine hours of Mr. Eades' time at a rate of $175 per hour, or somewhere in between for a combination of the two. Given that the parties engaged in extensive discovery, Mr. Reed's attorneys deposed EOS's Rule 30(b)(6) witness in Massachusetts, the parties attended a settlement conference and other pretrial conferences, and the parties fully briefed a summary judgment motion, an award of $5,000 would not be reasonable. That said, the Court will consider EOS's specific arguments regarding the time Mr. Reed's attorneys spent on certain tasks.

### 1. Boilerplate Forms and Tasks

EOS argues that Mr. Reed's attorneys use boilerplate forms, such as complaints, affidavits, demand letters, and discovery requests in the many FDCPA cases they work on, and that their time entries related to drafting, reviewing, or modifying those boilerplate documents should be reduced. [Filing No. 80 at 6-7.] Specifically, they request that the fee award be reduced by $1,092.50, accounting for 5.5 hours of work on the part of Mr. Steinkamp and Mr. Eades. [Filing No. 80 at 6.]

Mr. Reed responds that while his attorneys may use boilerplate forms as models, they "must be tailored to meet the case at hand and such modifications take[] time." [Filing No. 82 at 5.] He notes that his attorneys' approach "is much more efficient and cost-effective than having Plaintiff's counsel reinvent the wheel with each pleading for each case." [Filing No. 82 at 6.]

The Court has reviewed the entries EOS argues are excessive, and finds that the amount of time Mr. Reed's attorneys spent on each task EOS objects to was reasonable. While boilerplate documents provide an efficient starting point, the attorneys must still tailor the documents to the particular case and that takes time. The entries EOS objects to do not reflect that excessive time was spent doing so, and the Court declines to reduce the requested fees on that basis.

   2. *Administrative and Clerical Tasks*

EOS contends that "attorney or paralegal time should not be billed for administrative or clerical tasks," and "such items are presumed to be part of the overhead of running a legal practice and are not properly recoverable." [Filing No. 80 at 7.] EOS lists several tasks it argues are administrative or clerical, and requests that $980 be subtracted from the requested fee award. [Filing No. 80 at 7-8.] It specifically notes two entries where a paralegal billed a total of .40 hours (twenty-four minutes) to file notices of appearance on behalf of Mr. Steinkamp and Mr. Eades. [Filing No. 80 at 8-9.]

Mr. Reed argues that paralegal time spent filing documents is compensable, that electronic filing is not routine clerical work, and that attorney time spent reviewing filings is compensable. [Filing No. 82 at 6-7.]

The Court disagrees with EOS's characterization of the tasks it objects to as purely administrative and clerical in nature. EOS relies upon a Seventh Circuit case holding that time a paralegal spent "organizing file folders, [engaging in] document preparation, and copying

10

documents" was not compensable. [Filing No. 80 at 7 (citing *Spegon*, 175 F.3d at 553).] Here, the paralegal performed more substantive tasks such as redacting exhibits, drafting and filing pleadings, and preparing discovery requests. [Filing No. 80 at 7-8.] These tasks are not clerical, but rather require the paralegal to ensure that documents are ready for service on opposing counsel or filing – whether it be making sure a document is properly redacted, is free of errors, or is ultimately properly filed electronically. Further, the Court does not find it unreasonable that Mr. Steinkamp and/or Mr. Eades reviewed certain pleadings after they were filed by EOS, or drafted emails to a court reporter. These tasks may require certain knowledge of the case. EOS has not provided any evidence that the tasks it objects to as clerical or administrative were on the same level as organizing file folders, copying documents, and the like. The Court will not reduce the requested fees on this basis.

### 3.  *Duplicative, Excessive, and Unnecessary Tasks*

EOS lists several tasks that it argues are duplicative because they were also performed in the *Reynolds* case. [Filing No. 80 at 9-11.] It argues that Mr. Reed "acknowledged [he] had no factual support" for his § 1692d claim, so "additional reductions should be made to reflect Plaintiff's abandonment of such claim." [Filing No. 80 at 11.] EOS claims that the attorneys' time for researching and drafting the summary judgment motion is excessive because the "same motion for summary judgment and reply brief" were filed in *Reynolds*. [Filing No. 80 at 11.] It also objects to the attorneys "block billing" entries, arguing that the Court cannot determine whether the time spent was reasonable; to 1.7 hours spent obtaining a continuance of a status conference; to time spent filing documents under seal, because there was already a protective order in the case; and to time spent representing Mr. Reed in his bankruptcy. [Filing No. 80 at 9-14.] EOS seeks to reduce the fee request by $12,058.75 for these issues.

Mr. Reed responds that EOS has not provided any evidence that his attorneys' work was duplicative. For example, Mr. Reed argues that two attorneys attended the settlement conference because both this case and the *Reynolds* case were being addressed, and EOS has not provided any evidence that this was unreasonable. [Filing No. 82 at 9.] He also argues that he agreed to dismiss the § 1692d claim because he only needed to succeed on one of his claims in order to establish liability under the FDCPA, so dismissal was in the interest of judicial economy. [Filing No. 82 at 10.] Mr. Reed contends that the time spent researching, preparing, and editing the summary judgment brief was reasonable, and that his attorneys efficiently litigated the case. [Filing No. 82 at 11-12.] He also argues that his attorneys did not "block bill" and that block billing is not prohibited in any event, that the time spent obtaining a continuance of the status conference – which was scheduled by the Court – was reasonable, that the time spent drafting and filing a motion to seal was justified because it protected EOS's proprietary interests and Mr. Reed's interests, and that the entries which EOS contends are related to Mr. Reed's bankruptcy are not and Mr. Reed has not filed for bankruptcy. [Filing No. 82 at 12-14.]

The Court will address each of EOS's arguments, but will do so with the following previously noted principle in mind: in considering a motion for attorneys' fees, the Court "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox*, 131 S.Ct. at 2216. Accordingly, the Court will not nitpick the attorneys' invoices, but rather will attempt to reach what it finds to be a fair result. Further, the Court will consider the issues EOS raises in the context of this lawsuit, being mindful of the fact that Mr. Reed succeeded in obtaining summary

judgment on two of his three claims,[3] and that EOS chose to vigorously litigate this case after settling numerous cases involving the same issue. *See Montanez*, 755 F.3d at 553 ("the guiding inquiry is whether 'the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award"). EOS's decision to litigate was not without risk, one of which was that it might be liable for attorneys' fees and costs if it did not prevail.

First, as to work that EOS claims is duplicative between this matter and *Reynolds*, the Court finds that Mr. Reed has presented sufficient evidence that the time entries EOS points to are not duplicative. The invoices that Mr. Reed submitted indicate that many of the time entries relate to tasks performed for both this matter and *Reynolds*, and were split evenly among the two cases. [*See* Filing No. 75-3 at 2 (noting on first page of invoice that "\*\*" indicates "Time spent on Reed/Reynolds. Split between cases").] EOS has not presented any evidence that this is not the case. For items that are not notated as split among the two cases, these items appear to be particular to this case. For example, a February 11, 2016 entry stating "Began Drafting Reply in Support of Summary Judgment" for 1.10 hours appears to be specific to this case. The reply brief in this case was not identical to the reply filed in *Reynolds*, and this entry does not appear on this date in the *Reynolds* invoices. Additionally, the Court does not find it unreasonable that both Mr. Steinkamp and Mr. Eades attended the settlement conference. The only entries that give the Court pause are the following three: (1) 4/9/2015 – Drafted Plaintiff's discovery dispute letter regarding Defendant's incomplete & evasive responses (JTS) - .90 – 270.00; (2) 4/24/2015 - Drafted Notice of Deposition – John Burns (MAE) - .30 – 60.00; and (3) 10/20/2015 - Drafted Amended Notice

---

[3] The Court rejects EOS's argument that by dismissing his § 1692d claim, Mr. Reed acknowledged that he had no factual support for that claim. Instead, in dismissing his claim Mr. Reed stated that he had already prevailed on his §§ 1692e and 1692f claims, and only needed to prevail on one claim to establish liability. [Filing No. 67.]

of Deposition and Subpoena (JTS) - .50 – 150.00.  EOS claims that these documents are identical to the documents used in *Reynolds*, yet the line items do not denote that the time was split between this case and *Reynolds*.  Mr. Reed does not address these entries in his reply brief.  Accordingly, the Court finds it proper to include only half of the time spent on these tasks in the fee request, and will subtract $218.75 from the fee award.[4]

Second, EOS points to two entries that it argues indicate Mr. Reed's attorneys engaged in "block billing."  [Filing No. 80 at 11-12.]  The Court does not find these entries problematic.  Issues with block billing can arise when attorneys list multiple tasks, but only provide the total time to accomplish all of those tasks.  In that situation, it is difficult to judge whether the time spent was reasonable.  Here, the first entry includes four tasks that are: "[r]eviewed legal research, traveled to Boston, prepared for deposition, and reviewed discovery responses."  [Filing No. 80 at 11.]  It indicates that this work was performed both in this case and in *Reynolds*, so the time was split.  The time associated with this case is 1.5 hours, meaning a total of 3 hours was spent.  This seems imminently reasonable, considering that travel from Indianapolis to Boston is one of the tasks.  The second entry includes two tasks: "Reviewed Legal Research & Modified Reply."  [Filing No. 80 at 11.][5]  These tasks were spent only on this case, and the indicated amount of time – 1.50 hours – is reasonable.  The Court declines to reduce the requested fee amount by these two entries simply because they include more than one task in the entries.

---

[4] Mr. Steinkamp spent 1.4 hours on these tasks, and Mr. Eades spent .30 hours, so the Court has subtracted .7 hours at the $275/hour rate and .15 hours at the $175/hour rate, for a total deduction of $218.75.

[5] EOS states that these tasks took place on February 23, 2016, but this appears to be a typographical error as the invoices indicate that they took place on February 22, 2016.  [*See* Filing No. 75-3 at 20; Filing No. 80 at 11.]

14

Third, EOS objects to time Mr. Reed's attorneys spent obtaining a continuance of a status conference. [Filing No. 80 at 12.] Again, the Court will not engage in such a detailed analysis of the time spent on certain tasks. While 1.7 hours seems a bit high for obtaining a continuance for a status conference, Mr. Reed states that EOS's attorneys did not respond to some of the emails relating to the requested continuance. [Filing No. 82 at 13.] This litigation has been contentious, and the Court cannot conclude that this amount of time was unreasonable given that history. It will not reduce the fee award for time spent obtaining the continuance.

Fourth, EOS argues that time spent filing a motion to maintain documents under seal should not be recoverable because there was a protective order in place. [Filing No. 80 at 13.] A protective order would not protect the public from viewing exhibits filed by the parties, and the Court will not second-guess Mr. Reed's attorneys' litigation strategy and decisions. Therefore, it will not subtract the 1.4 hours the attorneys spent filing the motion to maintain documents under seal and performing tasks related to the motion.

Finally, EOS argues that three time entries relate to the attorneys' "bankruptcy representation of Plaintiff." [Filing No. 80 at 13.] The first entry states: "Reviewed client's credit reports as part of bankruptcy representation and noticed discrepancy on amounts repeated by Defendant." [Filing No. 80 at 13.] Although it mentions "as part of bankruptcy representation," the entry appears to relate to the amount that EOS actually reported to the credit reporting agencies – which was an issue in this litigation. The second and third entries – "Telephone call with Client surrounding findings from credit report" and "Meeting with client to go over case, affidavit and complaint" – appear to relate to this case, and not to a pending bankruptcy. In any event, Mr. Reed states that he has not filed for bankruptcy, [Filing No. 82 at 14], and EOS has not provided any evidence that he did. The Court will not subtract the time associated with these entries.

### C. Supplemental Fees and Costs

Mr. Reed also seeks fees and costs associated with litigating the pending motion. [Filing No. 83.] In support, he submits an affidavit from Mr. Steinkamp and an invoice reflecting $2,692.18 in additional fees and costs. [Filing No. 83-1; Filing No. 83-2.] EOS did not file a response to the Supplemental Motion. The Court has reviewed the invoice, and finds the supplemental fees and costs to be reasonable, subject to the adjustment of the hourly rates consistent with the Court's discussion above. Accordingly, it will include the supplemental amount, as adjusted, in its award of fees and costs.

In sum, the Court finds that $275 per hour for Mr. Steinkamp, $175 per hour for Mr. Eades, and $100 per hour for the paralegal are reasonable rates, and that the attorney and paralegal time spent on this case, except for the small amount of duplicative time addressed above, was reasonable. The Court has calculated that Mr. Eades spent 29.4 hours on this case, Mr. Steinkamp worked 55.71 hours, and the paralegal worked 22.45 hours.[6] Given that the case has been pending for over two years, extensive discovery took place, numerous pretrial conferences and a settlement conference were held, and the parties briefed a summary judgment motion, these amounts of time are reasonable. After performing a lodestar analysis, the Court finds that Mr. Reed is entitled to $22,491.50 in attorneys' fees[7] and $1,390.26 in costs.

---

[6] The invoices Mr. Reed provided did not include the total number of hours that each attorney and the paralegal worked. This made the Court's review of the invoices, and subsequent calculation of the fees at the reduced rated, unnecessarily cumbersome. Any further fee motions must be supported by invoices that include such a break-down.

[7] The $22,491.50 figure includes $20,082.50 in attorneys' fees from the initial motion (which factors in the $218.75 deduction for duplication of tasks), and $2,409.00 in attorneys' fees from the supplemental motion.

## IV.
### CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Mr. Reed's Motion for Assessment of Attorneys' Fees and Costs, [Filing No. 75], and **GRANTS IN PART** Mr. Reed's Supplemental Motion for Assessment of Attorneys' Fees and Costs, [Filing No. 83]. The Court awards Mr. Reed $22,491.50 in attorneys' fees and $1,390.26 in costs. Final judgment shall issue accordingly.

Date: 11/22/2016

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**